United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Leonard Alfred McField Smith and Danielle Barrett, Plaintiffs, <br><br> v. <br><br> North Miami Police Department and others, Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 23-22505-Civ-Scola <br> ) <br> ) <br> ) |

## Order Dismissing Complaint

Plaintiffs Leonard Alfred McField Smith and Danielle Barrett, proceeding pro se and *in forma pauperis*, complain the Defendants—the City of North Miami, Officer Emmanuel Ocean, Officer Kessler Brooks, and Alpine Towing, Inc.—wrongfully took their property (the van in which they were living and all of its contents) and harassed them. (2nd Am. Compl., ECF No. 38.) Among their claims, the Plaintiffs mention violations of their Fourth, Fifth, Eighth, and Fourteenth Amendment rights (*id.* at 3) and accuse the Defendants, variously, of harassment, "solicit[ing] a trespass," conspiracy, and negligent training (*id.* at 5, 8–10). Previously, the Plaintiffs amended their initial complaint, as a matter of right (Am. Compl., ECF No. 13). Thereafter, however, the Court struck their amended complaint, upon the Defendants' motion, concluding it was a shotgun pleading. (Order, ECF No. 37.) At the same time, the Court dismissed the North Miami Police Department from this case, pointing out that the department lacks the capacity, under Florida law, to be sued. (*Id.* at 3.) As permitted by that order, the Plaintiffs submitted their second amended complaint to which the Defendants have once again filed a motion to dismiss, arguing, under Federal Rule of Civil Procedure 12(b)(6), that the Plaintiffs have failed to state a claim. (Defs.' Mot., ECF No. 39.) Though the Plaintiffs timely responded in opposition (Pl.'s Resp., ECF No. 40), the Defendants have not replied and the time to do so has passed. After review, the Court **denies** the Defendants' motion to dismiss **as moot** (**ECF No. 39**), instead **dismissing** the Plaintiff's case because their second amended complaint remains a shotgun pleading, failing to rectify the deficiencies the Court previously identified.

In its order striking the Plaintiff's amended complaint, the Court afforded the Plaintiffs the opportunity to amend their complaint again, explained in detail why their complaint was an impermissible shotgun pleading, and provided them with detailed instructions to follow in order to fix their complaint's flaws. (Order at 2–3.) Despite the Court's roadmap, the second amended complaint fares no better than its prior iteration.

While the current version of the complaint shows marginal improvement in some minor respects—it is now fully legible and separates the narrative of the complaint into four sections, one for each Defendant—it is still nearly impossible to ascertain which facts or theories support each cause of action or even what causes of action the Plaintiffs mean to lodge against each Defendant. Indeed, within the Court provided complaint form portion of their pleading, the Plaintiffs indicate their claims arise under 42 U.S.C. § 1983, premised on violations of their Fourth, Fifth, Eight, and Fourteenth Amendment rights, but then never connect any of those broadly referenced violations to any actual claims or to the two-and-a-half pages of facts they attach to the form. Even more problematic, once again, the Plaintiffs' grievances hinge on "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015).

For example, in the section of the complaint that the Plaintiffs appear to dedicate to Brooks, the Plaintiffs provide a smattering of facts without directly tying those facts to any particular viable cause of action. They inform that Brooks was the first officer to contact them, sometime in early July 2022, and that he ordered them to move their van, telling them it would be towed in forty-five minutes if they did not move it themselves. (2nd Am. Compl. at 8.) When Brooks thereafter left the scene that day (without having their van towed), he said he would send another officer. (*Id.*) That officer arrived and then reiterated that the Plaintiffs needed to move their van. (*Id.*) Some days later, on July 13, a different officer issued a citation to the Plaintiffs. (*Id.*) Then, two weeks after that, on July 27, Brooks and three other officers, had the van towed, which held all the Plaintiffs' belongings. (*Id.*) Woven throughout this threadbare narrative, are the Plaintiffs' conclusory accusations that (1) Brooks was "never able to give reasonable articulable suspicion for his first contact"; (2) the Plaintiffs "were denied due process"; (3) Brooks "conspired against" the Plaintiffs with other officers and Alpine Towing; (4) "Brooks unlawfully harassed [the Plaintiffs] and illegally [seized their] property"; and (5) Brooks, along with three other officers "forced [the Plaintiffs] out of [their] van under duress and threat of arrest." (*Id.*) Missing from the Plaintiffs' narrative is any factual information about where the van was parked, whether the van was permitted to be parked where it was, what the citation was issued for, or any acknowledgment that, by their own admission, the Plaintiffs were warned over a series of weeks that they needed to move their van. This difficult to parse and, at times, internally inconsistent chronicle of events, combined with the complaint's vague references to purely speculative claims, is exactly the kind of deficiency the Court identified in its previous order. Once again, the nature of the Plaintiffs' presentation prevents the Court from being able to discern any of the underpinnings of their claims or whether those claims are even remotely plausible.

The Plaintiffs' allegations against the other three Defendants fare no better. For instance, they say Officer Ocean "made approximately 11 contacts" with them although they don't specify when any of the 11 contacts occurred or why. (*Id.*) Instead, the Plaintiffs say that on July 13, 2022, Ocean "brought a tow truck to take the car." (*Id.*) Despite bringing a tow truck that day, however, the van was not towed then. (*Id.*) Instead, the Plaintiffs say that Ocean "came to the scene" again on July 26, with another officer, and told the Plaintiffs that their van would be taken the next day. (*Id.* 8–9.) It does not appear Ocean was present on the day the van was actually towed, on July 27. Sometime after the van was towed, the Plaintiffs say Ocean "started showing up to Publix" and then, many months later, "solicit[ed] a trespass" against the Plaintiffs. (*Id.* at 9.) Other than alluding to "harassment" and "soliciting a trespass," the Plaintiffs offer no further clarity or support for any plausible claims against Ocean.

The Plaintiffs' claims against Alpine Towing and the City of North Miami are even thinner. The only facts the Plaintiffs supply as to Alpine Towing are that Alpine towed away their van and thereafter told the Plaintiffs that it had discarded it. (*Id.* at 9.) Upon just this slender reed, the Plaintiffs seek to support their claims that Alpine "had no authority to move/tow the van from where it was legally parked" and that Alpine "conspired with North Miami Police Officers to wrongfully take and deny [the Plaintiffs their] property." (*Id.*) Similarly, the only facts the Plaintiffs set forth regarding the City of North Miami are that it employed the police officers referenced in the complaint and that it may have had a contract with Alpine Towing. (*Id.* at 10.) From those facts the Plaintiffs charge that the City was responsible for training the officers (with the implication presumably being that it failed to properly do so), responsible for the actions of Alpine, and thus vicariously liable for both the officers as well as Alpine's violations of the Plaintiffs' Fourth Amendment rights. (*Id.*)

Ultimately then, the Plaintiffs failed to substantially heed the Court's prior admonishments. Although it appears they attempted to isolate which claims and facts pertained to which Defendants, by adding the names of the four Defendants as headings to four sections of their narrative, their pleading still falls woefully short. The amended pleading does not comply with the pleading requirements in Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure; the Plaintiffs again fail to separate each cause of action into a separate count; they also fail to supply actual facts, rather than conclusory or vague allegations, to support their claims; and, finally, they once again fail to identify which factual allegations and acts pertain to which cause of action. *See e.g.*, *Jean-Baptiste v. Publix Super Markets, Inc.*, No. 23-12949, 2024 WL 1988965, at *2 (11th Cir. May 6, 2024) ("The complaint was a shotgun pleading because it contained conclusory, vague, and immaterial facts that were not obviously connected to a particular count."). Although "[p]ro se litigants are given more leeway than parties represented by counsel," they "must still follow shotgun-pleading rules and must give the

defendant adequate notice of the claims against it and the grounds on which the claims rest." *Brown v. Columbus Police Dept.*, No. 23-11896, 2024 WL 3451862, at *6 (11th Cir. July 18, 2024). Importantly, "even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). And, once a Court provides a plaintiff with an opportunity to amend a shotgun complaint and that amended pleading does not substantially fix the previous complaint's deficiencies, "dismissal with prejudice is warranted." *Brown,* 2024 WL 3451862 at *6; *see also Brown v. TitleMax of Georgia, Inc.*, No. 23-10345, 2024 WL 3161005, at *2 (11th Cir. June 25, 2024) ("If a plaintiff has been given fair notice of a defect in her complaint and a meaningful chance to fix it but files an amended complaint plagued by the same defect, then dismissal with prejudice is proper.").

Accordingly, as to the Plaintiffs' federal claims, this dismissal is with prejudice, albeit on non-merits grounds. See *Arrington v. Green*, 757 F. App'x 796, 798 (11th Cir. 2018) (concluding that the district court did not abuse its discretion by dismissing a pro se plaintiff's complaint with prejudice, on shotgun-pleading grounds, where the plaintiff was given "at least one opportunity to re-plead the complaint"). To the extent the Plaintiffs have any remaining state-law claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over them, thus dismissing any state-law claims *without* prejudice. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (explaining that where a complaint is dismissed as a shotgun pleading, and a further sua sponte amendment is not offered, any remaining state-law claims should be dismissed "without prejudice as to refiling in state court").

Because the Court dismisses this case based on shotgun-pleading grounds, it **denies** the Defendants' motion to dismiss for a failure to state a claim **as moot** (**ECF No. 39**).

The Court directs the Clerk to **close** this case and any other pending motions are **denied as moot**.

**Done and ordered**, in chambers at Miami, Florida, on August 7, 2024.

_____
Robert N. Scola, Jr.
United States District Judge